UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDSEY STEWART,<br><br>                     Plaintiff,<br><br>v.<br><br>CITY OF CARLSBAD, et al.,<br><br>                     Defendants. | Case No.: 23cv0266-LL-MSB<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS WITH PREJUDICE, DISMISSING STATE-LAW CLAIMS WITHOUT PREJUDICE, AND CLOSING CASE**<br><br>**[ECF No. 25]** |

     Plaintiff Lindsey Stewart, acting pro se, sued Defendants City of Carlsbad, City of Carlsbad Police Department, and Carlsbad Police Chief Williams (together, "Defendants"). The First Amended Complaint is operative. ECF No. 23 ("FAC"). Defendants moved to dismiss the FAC. ECF No. 25. The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS IN PART** the Motion to Dismiss with prejudice, **DISMISSES** the state-law claims without prejudice, and **CLOSES** the case.

**I.     BACKGROUND**

     The Court previously granted Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, but with leave for her to cure it through amendment. ECF No. 10. Because Plaintiff failed to timely amend her complaint,

1  Defendants moved to dismiss the action pursuant to Federal Rule of Civil Procedure 41(b).
2  ECF No. 11. While that motion to dismiss the action was pending, Plaintiff appealed the
3  Court's order dismissing the complaint to the Ninth Circuit. ECF No. 12. The Ninth Circuit
4  granted Defendants' motion to dismiss that appeal for lack of jurisdiction, reasoning that
5  "a plaintiff, who has been given leave to amend, may not file a notice of appeal simply
6  because he does not choose to file an amended complaint. A further district court
7  determination must be obtained." ECF No. 15 (quoting *WMX Techs., Inc. v. Miller*, 104
8  F.3d 1133, 1136 (9th Cir. 1997)).

9        On June 14, 2024, the Court spread the Ninth Circuit's mandate. ECF No. 16. In
10 doing so, the Court denied Defendants' motion to dismiss for failure to amend the
11 complaint and liberally granted Plaintiff a further opportunity to amend her complaint in
12 light of her "pro se status." *Id*. at 2. However, it also warned that should she fail to timely
13 file an amended complaint by July 15, 2024, "the Court may enter a final order dismissing
14 this action without prejudice." *Id*.

15       On July 15, 2024, Plaintiff moved for more time to file a FAC. ECF No. 19. Plaintiff
16 sought "to obtain Police Video Recordings from Defendants under a June 23, 2022 FOIA
17 to the City Clerk" to "lodge them with the First Amended Complaint" as "claims of Police
18 Misconduct." *Id*. at 1. Defendants opposed, arguing that she was "apparently referencing a
19 California Public Records Act request that she submitted to the Carlsbad City Clerk, on
20 June 23, 2022." ECF No. 20, at 2. Defendants further stated that "the request was acted
21 upon by the City, and all responsive records in the City's possession were released, on July
22 21, 2022." *Id*. Defendants included a link to the "City's Public Records Portal, Request
23 Reference No. R002917-062322." *Id*.

24       The Court liberally granted Plaintiff's motion for more time to amend her complaint,
25 ordering that by November 7, 2024, she must file any FAC. ECF No. 22, at 4. On or about
26 that date, Plaintiff mailed her FAC to the Court, docketed on November 8, 2024, which the
27 Court treats as timely. FAC at 14. Unlike the original complaint, Plaintiff named Carlsbad
28 Police Chief Williams as a defendant in the FAC. *Compare* ECF No. 1 *with* FAC.

      Arguably, Plaintiff sued Mr. Williams in both his individual and official capacity. Plaintiff purports to have served Mr. Williams at the Carlsbad Police Department in May 2025, but she was already informed that he retired from the Department in April 2024. ECF Nos. 32, 34, 40. This, Defendants argued, conveyed that Plaintiff meant to sue the Police Chief in his or her official capacity. ECF No. 41. If so, the current Chief, Christie Calderwood, "joins in the pending motion" to dismiss. *Id*. at 2. On the other hand, Plaintiff noted "home address unknown at the time" in the summons, suggesting that she meant to sue Mr. Williams himself. ECF No. 40. Plaintiff also named Mr. Williams throughout her amended complaint. *See* FAC.

      In either case, the end result is the same. If Plaintiff sued the Police Chief in his or her official capacity, she joined in Defendants' motion to dismiss, and the Court finds that Plaintiff's claims all rise or fall in the same way for each type of Defendant here—the City, City Police Department, and City Police Department Chief. *See Silva v. San Pablo Police Dep't*, 805 F. App'x 482, 484 (9th Cir. 2020) ("The Ninth Circuit has squarely held that, depending on state law, a local law enforcement agency can be a separately suable entity."); *Thomas v. Cnty. of San Diego*, No. 18-cv-0924-BTM-DEB, 2021 WL 8014326, at *5–6 (S.D. Cal. Jan. 28, 2021) (concluding that "SDPD is a proper party to this lawsuit" because the "Ninth Circuit has held that police departments are 'public entities' as defined by California law and thus may be sued in federal court"); *Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 611 (9th Cir. 1986) ("As to the City, the policies of the Police Department became its policies because the policies set by the Department and its Chief may be fairly said to represent official City policy on police matters." (quotation marks and alterations omitted)). The Court finds the same even if Plaintiff sued Mr. Williams in his personal capacity. Insofar as Plaintiff sued Mr. Williams in his personal capacity, though, she has failed to timely serve him despite the Court's orders to show cause. *See* ECF Nos. 34, 35, 40, 42, 43; Fed. R. Civ. P. 4(m); CivLR 4.1(b). The Court thus **DISMISSES** this action without prejudice against Mr. Williams in his personal capacity. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint

is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . .").

Plaintiff also purports to have served Carlsbad Police Officer Robinson #5570 as if he were named a Doe in the FAC. ECF No. 38. However, Plaintiff did not include Doe defendants in her FAC. *See generally* FAC. Plaintiff instead identified Officer Robinson as one of many related, non-defendant parties. *Id*. at 2. The Court therefore disregards docket entry number 38. Besides, even if Plaintiff successfully named and served Officer Robinson as a defendant, the Court once again finds that the claims against him would rise or fall in the same way as the actual Defendants.

On November 22, 2024, Defendants timely moved to dismiss Plaintiff's FAC for failure to state a claim upon which relief can be granted, noting a January 3, 2025 hearing date. ECF No. 25. Plaintiff's deadline to file a response to that motion to dismiss was thus December 20, 2024. *See* CivLR 7.1(e)(2) (explaining that "each party opposing a motion" must do so "not later than fourteen (14) calendar days prior to the noticed hearing"). Plaintiff mailed her alleged response to Defendants' motion to dismiss on December 23, 2024. *See* ECF No. 27, at 19; ECF No. 28, at 1. The Court did not receive this response until December 26, 2024, which it docketed the following day. *See id*.

On December 27, 2024, the Court also issued an order to show cause stating that Plaintiff did not timely oppose the motion to dismiss and gave her one week to show cause "in writing why this matter should not be dismissed without prejudice for failure to prosecute or to file a response to Defendants' motion to dismiss." ECF No. 26, at 2. Plaintiff's filing mailed on December 23 and docketed on December 27 arguably opposed Defendants' motion to dismiss, so the Court liberally treats it as an adequate response to its order to show cause and does not strike it as untimely. *See* ECF Nos. 26–29. The Court now turns to Defendants' motion to dismiss Plaintiff's FAC for failure to state a claim.

## II.    LEGAL STANDARD

Parties may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6); *see also Ileto v. Glock, Inc.*, 349 F.3d 1191,

1199–1200 (9th Cir. 2003) (requiring Rule 12(b)(6) to "be read in conjunction with Rule 8," which requires a short and plain statement showing that the pleader is entitled to relief). To survive this motion, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party," courts are not required to accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

This standard is ultimately a "liberal" one, especially when the action has been filed "pro se." *See Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976). Still, even under a "liberal interpretation," courts "may not supply elements of the claim that were not initially pled." *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### III. DISCUSSION

The FAC has claims for Defendants' alleged violations under: (1) the Fourteenth Amendment's Due Process Clause, including for failure to investigate citizen complaints against police officers (and failure to do the same under Cal. Penal Code § 832.7(e)(1)); (2) the duty of care, negligent infliction of emotional distress; (3) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; (4) the ADA and Rehabilitation Act for failure to accommodate disabled senior citizens; and (5) the Housing Element Law, Cal. Gov. Code § 65583.2(h). *See* FAC at 1.

    A.    **Federal-Law Claims (Claims 1, 3, and 4)**

        1.    **The Fourteenth Amendment (Claim 1)**

The Court first addresses Plaintiff's federal-law claims, starting with claim one under the Fourteenth Amendment. This "prohibits any state deprivation of life, liberty, or property without due process of law." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). If invoked, we "must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty or property; if protected

interests are implicated, we then must decide what procedures constitute due process of law." *Id*. (quotation marks omitted). "Due process always requires, at a minimum, notice and an opportunity to respond." *U.S. v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014).

Here, Plaintiff did not allege enough facts for the Court to plausibly infer any Fourteenth Amendment violation. In Carlsbad, it is unlawful for a person to park an "oversized vehicle" on any city street or parking lot between the hours of 2:00 a.m. and 5:00 a.m., subject to certain exceptions. *See* Carlsbad Mun. Code §§ 10.40.180(A)–(D). An "oversized vehicle" is "any motorized vehicle" or "combination of motorized vehicles and/or non-motorized vehicles or trailers that meets or exceeds 22 feet in length." *Id*. Between January and June 2022, Plaintiff alleged that Defendants ticketed her about thirty times for parking her 22-foot trailer on Carlsbad streets overnight. FAC ¶¶ 1–21. Plaintiff complained about and challenged the enforcement of this oversized vehicle parking ordinance with Defendants. *Id*.

Plaintiff alleged that "California Penal Code § 832.5" requires each law enforcement agency to have a "complaint program," which Defendants violated by failing to investigate some of her complaints. *Id*. ¶¶ 1–19. This included complaints about police misconduct in violation of "California Penal Code § 832.7." *Id*. ¶¶ 2–4. Specifically, Plaintiff alleged that Defendants "failed to develop an effective program to handle citizens grievances relating to police officers' misconduct;" "denied Plaintiff her constitutional right to due process, to investigate police officers for improper conduct" as "[n]o investigation ever took place;" and "failed to establish department protocols when encountering involuntary homeless citizen on public property," including "by systemic practice and procedure, that denied a senior citizen access to park her 22ft home/trailer on public streets between the hours of 2:00-5:00am." *Id*. ¶¶ 5–7.

The Court finds these allegations to be conclusory. In addition, even if Defendants did not attentively respond to each and every one of Plaintiff's many complaints, the Court does not find that such a failure deprived Plaintiff of any plausible life, liberty, or property interest under the Fourteenth Amendment. Perhaps she meant to allege that receiving the

parking citations deprived her of a life, liberty, or property interest instead. This is not clear from the face of her FAC. *See generally* FAC. But even assuming that Plaintiff alleged receiving relatively modest parking tickets deprived her of a constitutionally cognizable property interest or the like, she certainty did not allege that Defendants deprived her of the right to notice or an opportunity to respond. To the contrary, Plaintiff explicitly alleged that Defendants had a procedure in place for her to contest them and informed her as much. *See id*. ¶ 9 ("If you wish to contest a parking citation you can do so here: Pay or Contest Your Parking Ticket | Carlsbad, CA (carlsbadca.gov)."); *see also* Cal. Veh. Code § 40215; Carlsbad Mun. Code § 10.42.010(C).

Because Plaintiff did not allege enough facts to plausibly establish a claim under the Fourteenth Amendment's Due Process Clause, the Court **DISMISSES** her first claim.[1]

## 2.    The ADA and Rehabilitation Act (Claims 3 and 4)

Next, the Court considers Plaintiff's third and fourth claims for violations under the ADA and Section 504 of the Rehabilitation Act. Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act," so the two claims often rise or fall together. *See Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

"To make out a prima facie case under either the ADA or Rehabilitation Act," one must show that (1) she is "disabled under the Act;" (2) she is "otherwise qualified;" (3) she was excluded, denied, or discriminated against "solely because of her disability;" and (4) the defendant "receives federal financial assistance (for the Rehabilitation Act claim)" or "is a public entity (for the ADA claim)." *See id*. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life

---

[1] Inasmuch as state-law causes of action can be plausibly mined from Plaintiff's first claim, the Court declines to exercise supplemental jurisdiction over them.

activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Meanwhile, a "qualified individual with a disability" is one who, "with or without reasonable modifications to rules," "meets the essential eligibility requirements" for "participation in programs or activities provided by a public entity." *Id.* § 12131(2).

      Here, Plaintiff did not allege enough facts to plausibly suggest that she is disabled under the ADA, let alone that she was excluded, denied, or otherwise discriminated against because of that disability. At bottom, Plaintiff alleged that Defendants failed to reasonably accommodate her, a disabled senior citizen, by "failing to provide a process for individuals with disabilities to seek an exemption from enforcement or an alternative in the form of safe parking," which "discriminates against houseless people with disabilities who live in vehicles based on their disabilities." *See* FAC ¶¶ 26–30. Other than conclusorily allege that she was a "senior citizen," she did not allege how she was recorded as, regarded as, or actually "disabled." *See generally* FAC. Courts have dismissed claims on this basis alone. *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1115 (9th Cir. 2008) (noting that "being old is not, *per se*, equivalent to being disabled"); *Eulitt v. City of San Diego*, No. 18-cv-2721-AJB-WVG, 2020 WL 2555776, at *3–4 (S.D. Cal. May 20, 2020) (dismissing the plaintiff's ADA claim because she did not allege enough facts to plausibly suggest that she has "any kind of mental or physical impairment"). Plaintiff living out of her 22-foot trailer due to financial necessity is not a disability, either. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997) (finding that the plaintiff's "inability to satisfy a condition of eligibility because of his financial circumstances" was not a "disability" under "the ADA or Rehabilitation Act").

      In a response to one of the Court's orders to show cause, Plaintiff did say she was "losing her ability to walk." ECF No. 28, at 2. But since this allegation was not in her FAC, the Court does not address it other than in this arguendo. Even assuming that Plaintiff's unspecified walking difficulty was substantial and qualified as a disability under the ADA, she did not plead enough facts to plausibly suggest that she was excluded, denied, or

otherwise discriminated against because of that disability. For instance, she did not allege facts plausibly suggesting that a disability required her to park her 22-foot trailer on Carlsbad streets overnight, that Defendant targeted her because of that disability, or that the ordinance disparately burdened or impacted her on account of that disability.

On the last point, Plaintiff correctly argued that a facially neutral program can violate the ADA if it disparately burdens or impacts the disabled. *See* ECF No. 27 (citing *Bloom v. City of San Diego*, No. 17-cv-2324-AJB-NLS, 2018 WL 9539238 (S.D. Cal. Jun. 8, 2018)). That court found the plaintiffs stated a claim under the ADA and Rehabilitation Act when challenging a similar ordinance, but only because they alleged sufficient facts to plausibly convey that they were both disabled and disproportionately burdened by the ordinance. *Bloom*, 2018 WL 9539238, at *3 ("Here, plaintiffs allege three ways in which they are disproportionately burdened by the ordinances: (1) plaintiffs cannot simply stay at the City's homeless shelters as the shelters cannot accommodate plaintiffs' disabilities; (2) plaintiffs' pre-existing conditions makes them more vulnerable to unsheltered homelessness if their RVs are impounded; and (3) plaintiffs cannot access permanent housing since their disabilities preclude them from working and result in fixed incomes."). Thus, the court reasoned, while "the City does raise credible issues as to the complaint's focus on homelessness as the discerning factor here rather than plaintiffs' disabilities, the complaint addresses these deficiencies" in those three ways. *Id.* at *4.

Conversely, nowhere in Plaintiff's FAC did she allege facts for (1) why her disability cannot be accommodated at the City's homeless shelters; (2) why her disability made her more vulnerable to unsheltered homelessness; or (3) why her disability precluded her from working and accessing permanent housing. *See generally* FAC. This case is therefore disanalogous from *Bloom* and analogous to *Eulitt*, a later opinion authored by the same judge. There, the court dismissed an ADA claim because the plaintiffs, who were evicted from their trailer parks, alleged "no details as to why the Ordinance No. 2584," "a facially neutral regulation that is generally applicable to all people regardless of disability status," "places a disproportionate burden on the disabled or any factual support that there is

disparate impact." *Eulitt*, 2020 WL 2555776, at *3–4.

Because Plaintiff did not allege enough facts to plausibly establish a claim under the ADA or Rehabilitation Act, the Court **DISMISSES** her third and fourth claims.

## IV. SUPPLEMENTAL JURISDICTION

The Court "has dismissed all claims over which it has original jurisdiction," that is Claims 1, 3, and 4, so it "may decline to exercise supplemental jurisdiction" over the state-law claims, namely Claims 2 and 5. *See* 28 U.S.C. § 1367(c)(3). In fact, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This Court finds the same and declines to exercise supplemental jurisdiction over all state-law claims.

## V. LEAVE TO AMEND

Courts have discretion to grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This discretion is guided by the strong federal policy favoring dispositions on the merits and permitting amendments with "extreme liberality." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Courts consider five factors during this deliberation: (1) "undue delay," (2) "bad faith or dilatory motive on the part of the movant," (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) "undue prejudice to the opposing party," and (5) "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

As this Court found in granting Plaintiff's request for more time to file the FAC, "the undue-delay factor has shifted in favor of Defendant" since it took over six months for Plaintiff to amend her complaint. ECF No. 22, at 3. Delay alone "cannot justify denial of leave to amend, but when combined with a showing of prejudice, bad faith, or futility of

amendment, leave to amend will likely be denied." *Larios v. Nike Retail Servs., Inc.*, No. 11-cv-1600-GPC-NLS, 2013 WL 4046680, at *3 (S.D. Cal. Aug. 9, 2013) (citation omitted). Sometimes, "delay in itself may be evidence of bad faith sufficient to justify denial of leave to amend." *Id*. This Court did not previously find Plaintiff to have "clear" bad faith or dilatory motive. ECF No. 22, at 3–4. But since then, Plaintiff has missed her deadline to oppose Defendants' motion to dismiss. *See* ECF Nos. 25–27. Moreover, despite the substantive similarity from Plaintiff's original complaint to her FAC—including repeated references to Carlsbad Police Chief Mikey Williams—she only added him as a defendant in the FAC. *Compare* ECF No. 1 *with* FAC. A similar concern of gamesmanship arises when considering that Plaintiff did not allege she was disabled in her original complaint, conclusorily added it to her FAC, and only alleged that she was losing her ability to walk after she missed the deadline to oppose Defendants' second motion to dismiss. *See* ECF Nos. 1, 23, 25, 28. At best, then, the bad-faith factor is neutral while the undue-delay factor weighs heavily against amendment. *See Landmark Equity Fund II, LLC v. Arias*, No. 15-cv-0202-JLT, 2015 WL 7458856, at *6 (E.D. Cal. Nov. 24, 2015) ("Because Plaintiff 'knew or should have known' the facts when the First Amended Complaint was filed, Plaintiff has unduly delayed by waiting more than six months to seek leave to amend the pleadings."); *Hernandez v. Winstar Props., Inc.*, No. 16-cv-4697-ODW-KSx, 2017 WL 3741258, at *2 (C.D. Cal. Aug. 30, 2017) ("Generally, it is inexcusable for a party to miss an unambiguous deadline.").

Plaintiff has failed to cure the deficiencies from her original complaint in her FAC, too, so this Court's discretion to deny further leave to amend is "particularly broad." *See Ascon*, 866 F.2d at 1160. Indeed, outside of Plaintiff swapping out her old claims with new ones, the factual nucleus over her complaints is largely the same. This Court finds that further leave to amend would thus be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2012) (affirming the district court's dismissal of the amended complaint with prejudice when the plaintiffs "failed to correct" the "deficiencies" in their prior complaint, which is "a strong indication that the plaintiffs have no additional facts to

plead"); *Finley v. Williams*, No. 21-cv-6277-RGK-PD, 2022 WL 2036309, at *3 (C.D. Cal. Jan. 24, 2022) (dismissing amended complaint with prejudice when it found amendment to be "futile" because the plaintiff did not cure the deficiencies in his prior complaint).

Finally, granting further leave to amend would unduly prejudice Defendants. Of all the factors, "prejudice to the opposing party carries the most weight." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). This action has been pending for over two years, in part due to Plaintiff repeatedly missing deadlines. During this time, Defendants have briefed and prevailed on their motion to dismiss the original complaint, moved to dismiss the action for failure to prosecute, briefed and prevailed on their motion to dismiss Plaintiff's appeal for lack of jurisdiction, opposed Plaintiff's motion for more time to file a FAC, responded to orders to show cause regarding which parties were properly named and served with the FAC, and now briefed and prevailed on their motion to dismiss the FAC. *See* ECF Nos. 7, 9, 11, 15, 20, 25, 32, 36, 41. Courts have found "undue prejudice" under far less egregious facts. *See CertainTeed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, No. 19-cv-0802-LHK, 2021 WL 5449073, at *12 (N.D. Cal. Nov. 22, 2021) (dismissing amended complaint with prejudice since "requiring Defendants to file yet another motion to dismiss would be unduly prejudicial" and "cause undue delay"); *Finley*, 2022 WL 2036309, at *3 (dismissing amended complaint with prejudice when it found amendment "would prejudice Defendant by inviting another motion to dismiss"). Nor did Plaintiff justify why she waited to raise her "new theories," which, as here, are "not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986). Defendants, having already addressed this case in a variety of different postures, would have to wait and likely expend more resources to file a third motion to dismiss. For all these reasons, further leave to amend unduly prejudices Defendants.

Overall, the *Foman* factors weigh heavily against amendment, so the Court does not grant Plaintiff leave to amend her complaint again.

## VI. CONCLUSION

Accordingly, the Court **GRANTS IN PART** Defendants' Motion to Dismiss Plaintiff's FAC: all federal-law claims (Claims 1, 3, and 4) are **DISMISSED** with prejudice and, since the Court declines to exercise supplemental jurisdiction, all state-law claims (Claims 2 and 5) are **DISMISSED** without prejudice to refiling in state court.[2] The Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 5, 2025

_____
Honorable Linda Lopez
United States District Judge

---

[2] As previously mentioned, to the extent other state-law causes of action can be plausibly mined elsewhere in the FAC, they are likewise dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.